# EXHIBIT A

NO. 08-1448

IN THE

# Supreme Court of the United States

EDMUND G. BROWN, JR., in his official capacity as
Governor of the State of California, et al.,

*Petitioners,*

v.

ENTERTAINMENT MERCHANTS ASSOCIATION and
ENTERTAINMENT SOFTWARE ASSOCIATION,

*Respondents.*

**On Certiorari to the United States Court of Appeals for
the Ninth Circuit**

**RESPONDENTS' MOTION FOR
ATTORNEYS' FEES AND EXPENSES**

PAUL M. SMITH
*Counsel of Record*
KATHERINE A. FALLOW
MATTHEW S. HELLMAN
DUANE C. POZZA
DAVID Z. MOSKOWITZ
JENNER & BLOCK LLP
1099 New York Avenue N.W.
Suite 900
Washington, D.C. 20001
(202) 639-6000
psmith@jenner.com

*Counsel for Respondents*

July 22, 2011

## CORPORATE DISCLOSURE STATEMENT

Respondent Entertainment Merchants Association, through its undersigned counsel, hereby states that it does not have a parent corporation and that no publicly held company owns 10% or more of its stock.

Respondent Entertainment Software Association, through its undersigned counsel, hereby states that it does not have a parent corporation and that no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ......................................................................................... 1

BACKGROUND ........................................................................................... 2

ARGUMENT ............................................................................................... 5

I.   PLAINTIFFS ARE ENTITLED TO THE REQUESTED FEES AND
     EXPENSES. ........................................................................................ 5

     A.  Plaintiffs Are the Prevailing Party .................................................... 5

     B.  Plaintiffs' Fees Are Reasonable. ........................................................ 7

         1.  Given the High Degree of Success Obtained by Plaintiffs, They Are
             Entitled to Recoup All of the Fees They Incurred in this Appeal. .............. 8

         2.  Plaintiffs Seek Compensation For a Reasonable Number of Hours. ........... 9

         3.  Plaintiffs Seek Reasonable Hourly Rates for Their Attorneys. ................. 13

     C.  Plaintiffs Are Entitled to the Requested Expenses. ........................................ 15

II.  PLAINTIFFS-RESPONDENTS' AWARD SHOULD EQUAL $1,144,602.64. ...... 15

CONCLUSION ............................................................................................. 17

# TABLE OF AUTHORITIES

**CASES**

*Ackerley Communications, Inc. v. City of Salem*, 752 F.2d 1394 (9th Cir. 1985) ........................................................................................................ 8

*Ballen v. City of Richmond*, 466 F.3d 736 (9th Cir. 2006) ............................ 5

*Bernardi v. Yeutter*, 951 F.2d 971 (9th Cir. 1991) ..................................... 11

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................ 7

*Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1991) ...................................... 14

*Brown v. Entertainment Merchants Ass'n*, 131 S. Ct. 2729 (2011) .......... 1, 6, 7, 9, 10

*Cabrales v. County of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991) ............ 6

*Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986) .............. 14

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ............................ 7, 14, 15

*Farrar v. Hobby*, 506 U.S. 103 (1992) ........................................................ 5

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................... 1, 5, 7, 8

*Hook v. Arizona Department of Corrections*, 107 F.3d 1397 (9th Cir. 1997) .............. 5

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) ................................................................................... 7, 15

*Springate v. Weighmasters Murphy, Inc.*, 73 F. App'x 317 (9th Cir. 2003) ............... 5

*Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782 (1992) ................................................................................ 5

*Thomas v. City of Tacoma*, 410 F.3d 644 (9th Cir. 1998) ........................... 8

*Video Software Dealers Ass'n v. Schwarzenegger*, 401 F. Supp. 2d 1034 (2005) ..................................................................................... 3

*Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950 (9th Cir. 2009) ..................................................................................... 4

*Video Software Dealers Ass'n v. Schwarzenegger*, No. CV-05-04188-RMW, 2007 WL 2261546 (N.D. Cal. Aug. 6, 2007) ........................................... 3

*West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83 (1991) ..................... 15

STATUTES

42 U.S.C. § 1983 ................................................................................... 2, 5, 6

42 U.S.C. § 1988 ...................................................................................... 1, 5

Cal. Civil Code § 1746.1 ............................................................................... 2

Cal. Civil Code § 1746.2 ............................................................................... 2

Cal. Civil Code § 1746.3 ............................................................................... 2

Cal. Civil Code § 1746.5 ............................................................................... 1

## INTRODUCTION

Pursuant to 42 U.S.C. § 1988, Plaintiffs-Respondents Entertainment

Merchants Association ("EMA") and Entertainment Software Association ("ESA")

(collectively, "Plaintiffs"), respectfully move this Court for an order granting them

attorneys' fees and expenses as the prevailing parties in *Brown v. Entertainment*

*Merchants Association*, 131 S. Ct. 2729 (2011). In *Brown*, the State of California

("California") sought review of Plaintiffs' successful First Amendment challenge to

Cal. Civil Code § 1746-1746.5 (2005) (hereinafter, the "Act"). This Court found that

the Act was an unconstitutional abridgment of protected expression, and it affirmed

the earlier decisions of the district court and the Court of Appeals, invalidating the

Act and permanently enjoining its enforcement throughout the State. *Brown*, 131

S. Ct. at 2731-42. Having fully succeeded in their First Amendment challenge to

the Act, Plaintiffs are entitled to an award for their attorneys' fees and expenses

under 42 U.S.C. § 1988. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("[A]

prevailing plaintiff [in civil rights litigation] 'should ordinarily recover an attorney's

fee unless special circumstances would render such an award unjust.'").

In this case, California persisted in defending a law that Plaintiffs warned

the Legislature was unconstitutional before it was passed; that was previously

found to be unconstitutional by the district court and a unanimous panel of the

Ninth Circuit; and that is similar to at least eight other laws invalidated as

unconstitutional prior to the time that California sought certiorari in this case.

Despite all of this California chose to seek further review in this Court, and this

Court has now confirmed the Act's unconstitutionality. Plaintiffs have already recovered attorneys' fees for successfully litigating this case in the courts below, and under well-established law, Plaintiffs are entitled to an additional award for the substantial additional work required to litigate the case in the Supreme Court.

In light of the success achieved by Plaintiffs, and based on this Motion, the attached supporting materials, and the record in this case, Plaintiffs ask that they be awarded a total of $1,144,602.64 in fees and expenses for work related to litigation in the Supreme Court, subject to a supplemental filing containing the not-yet-billed 2011 fees and expenses, almost all of which are associated with the fees and expenses incurred in preparing this Motion.

BACKGROUND

Plaintiffs brought this case under 42 U.S.C. § 1983, seeking declaratory and injunctive relief against enforcement of the Act, a California statute that, among other things, sought to impose penalties on any person who sold or rented to a minor what the Act defined as a "violent video game." Cal. Civil Code § 1746.1(a); § 1746.3. The Act also would have required these "violent video games" to be labeled, on the front of the package, with a white "18" outlined in black and at least two inches square. *Id.* § 1746.2. Plaintiffs' suit alleged that the restriction on the sale or rental of these games violated the First Amendment of the United States Constitution and was unconstitutionally vague.

Before the passage of the Act, Plaintiffs warned California officials that the Act would be unconstitutional and sought to work with California to undertake

2

educational efforts to assist parents in monitoring the games played by their children. See Joint Appendix ("J.A.") 92-93 (declaration of Doug Lowenstein, then-president of ESA, describing legislative testimony and Plaintiffs' offer "to work with the Governor and other State officials to help educate consumers about the [industry's] ratings system as a less speech-restrictive alternative to the Act"); *see also* J.A. 941-970 (Senate Judiciary Committee Report raising constitutional concerns about Act). Indeed, Gail Markels, representing the ESA, testified before the Entertainment, Sports, Tourism, and Internet Media Committee of the California Assembly regarding the Act's constitutional flaws, and the ESA similarly communicated that message to Governor Schwarzenegger through numerous meetings, letters, and telephone calls. J.A. 92-93. Unfortunately, California rejected Plaintiffs' warnings and offers, and Governor Schwarzenegger signed the Act into law on October 7, 2005.

Plaintiffs promptly moved for a preliminary injunction against the Act's enforcement prior to its effective date of January 1, 2006. The district court granted the injunction on December 21, 2005. *Video Software Dealers Ass'n v. Schwarzenegger*, 401 F. Supp. 2d 1034 (2005). Plaintiffs then moved for summary judgment, seeking a final judgment declaring the Act unconstitutional and enjoining it permanently. On August 8, 2007, the district court granted summary judgment for Plaintiffs, holding the Act unconstitutional and permanently enjoining its enforcement. *Video Software Dealers Ass'n v. Schwarzenegger*, No. CV-05-04188-RMW, 2007 WL 2261546 (N.D. Cal. Aug. 6, 2007). The district court entered

3

final judgment on August 14, 2007. Pet. App. 39a. Following the entry of judgment, Plaintiffs moved in the district court for an award of attorneys' fees and expenses. Thereafter, the parties entered into a stipulated agreement resolving Plaintiffs' motion for attorneys' fees under which California paid Plaintiffs $276,000 plus interest.

On September 11, 2007, California appealed the district court's grant of summary judgment in favor of Plaintiffs and denial of California's cross-motion for summary judgment. The appeal was fully briefed and the Court heard oral argument on October 29, 2008. On February 20, 2009, the Court issued an opinion affirming the district court's grant of summary judgment to Plaintiffs. *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950 (9th Cir. 2009). Following the decision, Plaintiffs moved for an award of attorneys' fees and expenses, and the parties again entered into a stipulated agreement resolving the motion under which California paid Plaintiffs $94,000.

California then filed a petition for a writ of certiorari to this Court on May 19, 2009, and Plaintiffs filed a brief in opposition. The Court granted the petition on April 26, 2010. Following full briefing, the case was argued before this Court on November 2, 2010. On June 27, 2011, the Court affirmed the judgment of the Ninth Circuit, concluding that the Act violated the First Amendment and that it had been properly enjoined. Plaintiffs now timely seek attorneys' fees and expenses against California for Plaintiffs' successful prosecution of this action before the Supreme Court.

# ARGUMENT

Having succeeded on appeal of their challenge to the Act, Plaintiffs are now entitled to their attorneys' fees and expenses on appeal under 42 U.S.C. § 1988. Section 1988 authorizes an award of a "reasonable attorney's fee as part of [its] costs" to the "prevailing party" in a 42 U.S.C. § 1983 action. 42 U.S.C. § 1988(b). As this Court has emphasized, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. at 429 (internal quotation marks omitted); *see also Ballen v. City of Richmond*, 466 F.3d 736, 746 (9th Cir. 2006). This rule applies equally to a plaintiff who successfully defends a lower court victory on appeal. *See, e.g., Springate v. Weighmasters Murphy, Inc.*, 73 F. App'x 317 (9th Cir. 2003); *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1404-05 (9th Cir. 1997).

## I. PLAINTIFFS ARE ENTITLED TO THE REQUESTED FEES AND EXPENSES.

### A. Plaintiffs Are the Prevailing Party.

There can be no doubt that Plaintiffs are a "prevailing party" within the meaning of 42 U.S.C. § 1988(b). Because Plaintiffs have obtained "actual relief on the merits of [their] claim" that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff," *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992), they are a "prevailing party." *See, e.g., Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1992) ("[T]o be considered a prevailing party within the meaning of

§ 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.").

Plaintiffs' action was brought under § 1983 to vindicate important First Amendment rights. Plaintiffs prevailed in their entirety in the district court and the Court of Appeals, obtaining a preliminary injunction, followed by entry of judgment in their favor and a permanent injunction against the enforcement of the Act, and an affirmance by a unanimous panel of the Ninth Circuit. Likewise, Plaintiffs have prevailed in every respect on appeal to this Court.[1] Indeed, besides affirming the lower court decisions, this Court rejected each of California's key arguments that the Act's content-based regulations here passed muster under the First Amendment. For example, the Court denied California's "unprecedented and mistaken" attempt "to create a wholly new category of content-based regulation that is permissible only for speech directed at children," agreeing with Plaintiffs that there is no "free-floating [state] power to restrict the ideas to which children may be exposed." *Brown*, 131 S. Ct. at 2735-36; *see also* Respondents' Br. at 14. The Court agreed with Plaintiffs that the "Act imposes a restriction on the content of protected speech" subject to "strict scrutiny," rejecting California's attempt to apply a lower standard, and concluding that California cannot provide compelling evidence to meet strict scrutiny. *Brown*, 131 S. Ct. at 2738; *see also* Respondents' Br. at 23-30. Likewise, the Court agreed with Plaintiffs that the Act was flawed because it was

---

[1] Plaintiffs remain entitled to attorneys' fees and expenses for their opposition to the California's petition for certiorari even though the petition was granted because Plaintiffs ultimately prevailed on the merit of the appeal. *See Cabrales v. County of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991).

not narrowly tailored, as it was both underinclusive and overinclusive. *Brown*, 131 S. Ct. at 2742 ("Legislation such as this, which is neither fish nor fowl, cannot survive strict scrutiny."); *see also* Respondents' Br. at 51-55.

In short, Plaintiffs obtained the highest degree of success in a case involving important First Amendment rights, where California was "mistaken[ly]" attempting to create a "wholly-new category" of unprotected, content-based regulation, *Brown*, 131 S. Ct. at 2735-36. Plaintiffs obtained an overwhelming victory vindicating the rights of their members and the public, and Plaintiffs are therefore entitled to the requested award.

## B. Plaintiffs' Fees Are Reasonable.

The fees and costs that Plaintiffs seek are reasonable for an appeal of this nature. An award of attorneys' fees is calculated using the lodestar method, which is determined by multiplying "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *see also Hensley*, 461 U.S. at 433. The lodestar "is presumed to be the reasonable fee," *Blum*, 465 U.S. at 887, and "includes most, if not all, of the relevant factors constituting a reasonable attorneys' fee," *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (noting that there is a "strong presumption" favoring the prevailing lawyer's entitlement to his lodestar fee). Here, Plaintiffs seek the lodestar figure, without any adjustments. As explained further below, the award sought by Plaintiffs is reasonable and should be allowed in full.

7

1.    **Given the High Degree of Success Obtained by Plaintiffs, They Are Entitled to Recoup All of the Fees They Incurred in this Appeal.**

Plaintiffs prevailed on the entirety of California's appeal of the lower court decision granting permanent declaratory and injunctive relief against enforcement of an unconstitutional law.  In light of their complete success in this appeal, Plaintiffs are entitled to be reimbursed for the full amount of fees they spent in defending their lower court victories on appeal.  Indeed, in determining the amount of attorneys' fees to award, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436; *see also Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 1998).  Further, awarding fees to the Plaintiffs vindicates not only the rights of the Plaintiffs and their members but also the First Amendment rights of the public, and the public interest broadly.  *See Ackerley Commc'ns, Inc. v. City of Salem*, 752 F.2d 1394, 1396-98 (9th Cir. 1985) (award of § 1988 attorneys' fees serves to vindicate constitutional rights, encourage voluntary compliance with the law, and serve the public interest).

Here, the "most critical factor" weighs heavily in Plaintiffs' favor.  This case involved important First Amendment principles, as the Act threatened the free speech rights of video game creators, publishers, and distributors, as well as video game players.  Plaintiffs prevailed on appeal and in doing so vindicated important First Amendment rights and enjoined enforcement of an unconstitutional law. Moreover, as demonstrated by the 28 amicus briefs filed in this case in support of Plaintiffs, the Court's decision in this appeal implicated the First Amendment rights of others outside the context of this particular Act, as California's attempt to

create a new category of unprotected, content-based regulation would have permitted far broader restrictions on individuals' free speech rights. In other words, Plaintiffs achieved the maximum degree of success possible in a lawsuit implicating First Amendment rights. A full award of fees on appeal is therefore amply justified.

### 2. Plaintiffs Seek Compensation For a Reasonable Number of Hours.

Plaintiffs are seeking compensation for the hours and legal work listed in the edited invoices attached as Attachment A to the Declaration of Matthew S. Hellman ("Hellman Decl.") (Exhibit 1). These fees pertain to work performed by Plaintiffs' attorneys throughout the course of this appeal, which included, among other things: preparing and filing an opposition to California's petition for certiorari, preparing and filing a brief, preparing and filing an appendix with excerpts from the record, communicating with *amici* who provided important perspectives on the significance of the case, and preparing for and participating in oral argument. Hellman Decl. ¶ 7.

Given the significant and specialized legal questions at issue in this case, Plaintiffs acted reasonably in retaining attorneys from Jenner & Block LLP, who represented Plaintiffs in the district court and Court of Appeals and who have extensive experience with First Amendment law generally, and with challenges to restrictions on video games in particular. Hellman Decl. ¶¶ 3, 4; *see Brown*, 131 S. Ct. at 2739 n.6 (noting previous cases, most litigated by Plaintiffs' counsel). These attorneys were able to represent Plaintiffs efficiently because they were already intimately familiar with the factual record and with the legal issues involved in the

appeal, having represented video game companies and associations in nearly every previous attempt to regulate video game expression based on its "violent" content. Hellman Decl. ¶¶ 4, 5. These attorneys also have extensive experience in Supreme Court litigation. *Id.* ¶¶ 4, 8, 9, 10, 11, 13.

While lower court decisions in this and similar cases applied existing Supreme Court precedent to strike down content-based regulations of video games, California asked the Supreme Court to adopt a different understanding of those precedents and a change in the law to recognize a new category of speech to minors that could be regulated. Thus, although Plaintiffs' attorneys were familiar with the issues from their prior work in this case and in other circuits, California's arguments in this Court required significant original research and briefing. Indeed, the Court's opinion drew on much of the detailed argument presented by the Plaintiffs: for example, the Court agreed with the Plaintiffs that there was no historical precedent for creating a "wholly new category of content-based regulation that is permissible only for speech directed at children," *Brown*, 131 S. Ct. at 2735; the Court agreed with Plaintiffs that the interactivity of violent video games did not make them different from other speech, *id.* at 2737-38; and the Court agreed with Plaintiffs' analysis that the social science research failed to prove causation of harm to minors and even if accepted as true showed only small effects, indistinguishable from effects produced by other media, *id.* at 2738-39. Accordingly, the time the attorneys devoted to briefing the issues and preparing for oral argument before the Supreme Court was reasonable and justified. Hellman Decl. ¶ 5.

To avoid unnecessary or duplicative work or the inefficient use of resources, Plaintiffs' counsel allocated responsibility in this case among several different attorneys, according to the experience and expertise of each attorney. Hellman Decl. ¶ 6. Jenner & Block appropriately staffed this case in its Washington, D.C. office with a senior partner (Paul M. Smith), junior partners (Katherine A. Fallow, Matthew S. Hellman, and Duane C. Pozza), Of Counsel (William M. Hohengarten) and associates (Jonathan F. Olin, David Z. Moskowitz, and Krishanti Vignarajah). *Id.* In addition, partner Elaine J. Goldenberg provided limited assistance in an advisory role. Each of these attorneys did work matched to their level of experience. *Id.* Finally, Plaintiffs hired three experienced Supreme Court and First Amendment litigators, Paul D. Clement, Lee Levine, and Theodore B. Olson, to participate in a moot court in preparation for the Supreme Court argument. Each of these litigators performed a discrete amount of work in preparation for the moot court and their participation was certainly reasonable in light of their substantial relevant experience, including Mr. Clement's and Mr. Olson's experience as former solicitors general.

Following success at the Supreme Court, preparation of this fee Motion was accomplished by Jenner & Block partners Matthew S. Hellman and Duane C. Pozza with the assistance of associate David Z. Moskowitz, each of whom performed discrete tasks in preparing and filing the Motion. Hellman Decl. ¶ 21. Plaintiffs are entitled to reimbursement for the fees and expenses expended in preparing and litigating this fee petition. *See, e.g., Bernardi v. Yeutter*, 951 F.2d 971, 976 (9th

Cir. 1991). Plaintiffs will submit a supplemental filing containing these fees and expenses as soon as the relevant bills are prepared.

Based on contemporaneous time records, the Jenner & Block attorneys and professional staff spent the following hours working on this case (as indicated in detail in Hellman Decl. ¶¶ 22,23 and Att. A):

| ATTORNEY | HOURS (2009) | HOURS (2010) | HOURS (2011)[2] |
|---|---|---|---|
| Paul M. Smith | 10.75 | 321.25 | TBD |
| Katherine A. Fallow | 12.50 | 374.00 | TBD |
| Elaine J. Goldenberg | N/A | 23.25 | N/A |
| Matthew S. Hellman | 27.00 | 304.00 | TBD |
| Duane Pozza | 43.75 | 345.25 | TBD |
| William M. Hohengarten | N/A | 80.50 | N/A |
| Jonathan F. Olin | N/A | 211.75 | N/A |
| David Z. Moskowitz | N/A | 137.50 | TBD |
| Krishanti Vignarajah | N/A | 212.50 | N/A |
| NON-ATTORNEY STAFF | | | |
| Cheryl L. Olson | 15.75 | 36.25 | TBD |

Plaintiffs' attorneys have reviewed the time records summarized above and reprinted in Attachment A to the Hellman Declaration. These records already exclude time for which the firm did not believe it was appropriate to bill Plaintiffs during the course of the appeal, and also exclude additional hours to ensure that compensation is not sought for work that might be deemed as properly excluded

---

[2] Plaintiffs will submit a supplemental filing containing the 2011 hours and fees, almost all of which are associated with the preparation of this Motion for attorneys' fees, after the relevant bills are available.

from a court-ordered fee award. Hellman Decl. ¶ 23. For example, Plaintiffs do not request compensation for activity that, although necessary for client or media relations, did not directly contribute to the litigation itself. *Id.* Plaintiffs also do not seek a fee enhancement based on Jenner & Block's considerable expertise and experience in this area. *Id.* In addition, Plaintiffs do not seek fees for the work of in-house counsel for the ESA, who were involved extensively in all aspects of this case. *Id.* The hours that remain, after the attorneys' review of the time records, were reasonably expended to accomplish the tasks necessary for this litigation. *Id.*

### 3. Plaintiffs Seek Reasonable Hourly Rates for Their Attorneys.

For the time period relevant to this application, the usual hourly rates for the Jenner & Block attorneys and professional staff – reflecting, among other things, their years of practice and experience – were (*see* Hellman Decl. ¶ 19):

| ATTORNEY | RATE (2009) | RATE (2010) | RATE (2011) |
|---|---|---|---|
| Paul M. Smith | $725 | $765 | $765 |
| Katherine A. Fallow | $525 | $517.50 | $517.50 |
| Elaine J. Goldenberg | N/A | $540 | N/A |
| Matthew S. Hellman | $495 | $490.50 | $490.50 |
| Duane Pozza | $495 | $490.50 | $490.50 |
| William M. Hohengarten | N/A | $585 | N/A |
| Jonathan F. Olin | N/A | $416.50 | N/A |
| David Z. Moskowitz | N/A | $340 | $360 |
| Krishanti Vignarajah | N/A | $314.50 | N/A |
| NON-ATTORNEY STAFF | | | |
| Cheryl L. Olson | $260 | $247.50 | $247.50 |

These are the same hourly rates customarily charged by Jenner & Block to Plaintiffs in this and other cases. *See* Hellman Decl. ¶ 20. These are also the rates customarily charged by these attorneys to paying clients in other cases, *id.*, and as such, they are presumptively correct. In fact, the billed rates were discounted in light of the substantial preparation necessary for merits briefing and oral argument. *Id.* These rates are similar to prevailing market rates charged by attorneys of comparable experience and expertise in the relevant market of attorneys who regularly practice before the Supreme Court. *Id.; see Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986) (court must consider "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation"); *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (rates requested are proper where they are in line with "the prevailing market rate in the relevant community").

Further, these rates are amply justified given the Jenner & Block attorneys' intimate familiarity with this particular case, from having represented Plaintiffs in the lower courts, and with the specialized subject matter of the litigation, from having represented Plaintiffs in similar cases around the United States. That familiarity allowed them to handle the matter with far greater efficiency and productivity than counsel who lacked such expertise. *See* Hellman Decl. ¶¶ 3-5. In sum, Plaintiffs' engagement of Jenner & Block in this matter was both reasonable and efficient, giving no basis to depart from the "'strong presumption' that the

14

lodestar represents the 'reasonable' fee." *Dague*, 505 U.S. at 562 (quoting *Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 565).

Finally, the Supreme Court has emphasized that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley,* 461 U.S. at 435. Plaintiffs have in fact achieved excellent results, and so a "full compensatory fee" is warranted.

### C. Plaintiffs Are Entitled to the Requested Expenses.

With regard to expenses, Plaintiffs seek out-of-pocket expenses as detailed in the edited invoices attached to the Hellman Declaration. These expenses were necessarily incurred and are the type of out-of-pocket expenses normally billed to fee-paying clients as disbursements, a component of attorneys' fees. Hellman Decl. ¶ 25. As such, they are recoverable as part of Plaintiffs' attorneys' fees. *See West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991). The vast majority of this request covers normal expenses for completing original research, printing, and photocopying. Additional documentation of these expenses and costs is attached to the Hellman Declaration at Attachment B.

## II. PLAINTIFFS-RESPONDENTS' AWARD SHOULD EQUAL $1,144,602.64.

Multiplying the time worked by each attorney by the hourly rates for each year yields the following calculation (*see* Hellman Decl. ¶ 24, Att. A):

| ATTORNEY | 2009 | 2010 | 2011 |
|---|---|---|---|
| Paul M. Smith | $7,793.75 | $245,756.25 | TBD |
| Katherine A. Fallow | $6,562.50 | $193,545.00 | TBD |
| Elaine J. Goldenberg | N/A | $12,555.00 | N/A |
| Matthew S. Hellman | $13,365.00 | $149,112.00 | TBD |
| Duane Pozza | $21,656.25 | $169,345.13 | TBD |
| William M. Hohengarten | N/A | $47,092.50 | N/A |
| Jonathan F. Olin | N/A | $88,193.88 | N/A |
| David Z. Moskowitz | N/A | $46,750.00 | TBD |
| Krishanti Vignarajah | N/A | $66,831.25 | N/A |
| NON-ATTORNEY STAFF | | | |
| Cheryl L. Olson | $4,095.00 | $8,971.88 | TBD |
| **TOTAL** | $53,472.50 | $1,028,152.88 | TBD |

In addition to the fees for Jenner & Block personnel, Plaintiffs are entitled to fees of $23,979.00 for the participation Paul D. Clement, Lee Levine, and Theodore B. Olson in a moot court in preparation for the argument. *See* Hellman Decl.¶ 24, Att. A. It was entirely reasonable for Plaintiffs to retain these highly experienced Supreme Court and First Amendment litigators for the discrete task of participating in a moot court exercise. The fees charged by these firms were based on the standard billing rates they customarily charge clients and encompassed only the handful of hours required to review the briefs and participate in the moot court. As such, these fees are entirely reasonable.

Finally, Plaintiffs also seek reimbursement for associated out-of-pocket expenses in this case in the amount of $38,998.26, an amount that encompasses

16

disbursements that were billed to and paid by Plaintiffs as a component of attorneys' fees.  *See* Hellman Decl. ¶ 25, Att. B.  Nearly all of these disbursements are associated with legal research, photocopying, printing, and filing costs.

Adding fees and expenses, Plaintiffs request a total compensation of $1,144,602.64, subject to a supplemental filing containing the not-yet-billed 2011 fees and expenses, almost all of which are associated with the fees and expenses incurred in preparing this Motion.  The fees and expenses are substantiated by the exhibits attached to this brief.

## CONCLUSION

For the reasons set forth above, this Court should award Plaintiffs the attorneys' fees and expenses, as requested.

Respectfully submitted.

By: _Paul M. Smith / mat_

PAUL M. SMITH
*Counsel of Record*
KATHERINE A. FALLOW
MATTHEW S. HELLMAN
DUANE C. POZZA
DAVID Z. MOSKOWITZ
JENNER & BLOCK LLP
1099 New York Avenue N.W.
Suite 900
Washington, D.C. 20001
(202) 639-6000
psmith@jenner.com

*Counsel for Respondents*

Dated:  July 22, 2011