# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHELBY COUNTY, ALABAMA

        Plaintiff,

v.

ERIC H. HOLDER, JR.,
in his official capacity as
ATTORNEY GENERAL OF THE
UNITED STATES, et al.,

        Defendants.

Civil Action No. 1:10-cv-00651-JDB

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

**EXHIBIT A**

**DECLARATION OF BERT W. REIN**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELBY COUNTY, ALABAMA<br><br>     Plaintiff,<br><br>v.<br><br>ERIC H. HOLDER, JR.,<br>in his official capacity as<br>ATTORNEY GENERAL OF THE<br>UNITED STATES, et al.,<br><br>     Defendants. | Civil Action No. 1:10-cv-00651-JDB |

## **DECLARATION OF BERT W. REIN**

1. I submit this declaration in support of Plaintiff Shelby County, Alabama's Motion for Attorneys' Fees. I am over 18 years of age. I have personal knowledge of the facts set forth below, and if called as a witness I am competent to and would testify as follows.

2. I am a partner in Wiley Rein LLP ("Wiley Rein") in Washington, D.C., and represent the Plaintiff, Shelby County, Alabama, in this matter. I co-founded the firm (known originally as Wiley Johnson & Rein, then Wiley & Rein, Wiley Rein & Fielding, and finally Wiley Rein) in 1983. The firm began with 39 attorneys and now includes more than 275 attorneys across all disciplines.

3. Prior to founding the firm, I was an associate at Kirkland & Ellis from 1967-1969, Special Assistant to the Under Secretary of State from 1969-1970, Deputy Assistant Secretary of State for Economic and Business Affairs from 1970 to 1973, and a partner in Kirkland & Ellis from 1973 to 1983. I was a law clerk to the Hon. John M. Harlan, Associate Justice of the Supreme Court of the United States, during October Term 1966. I received a LL.B., *summa cum laude*, from Harvard Law School in 1964, and a B.A., *summa cum laude*, from Amherst College in 1961. I am a member of the District of Columbia Bar and the bars of several federal district and appellate courts, along with the bar of the Supreme Court of the United States.

4. Since reentering private practice in 1973, I have focused on business litigation and counseling. I have represented airlines in antitrust and merger investigations and litigation, food and drug companies in tort and administrative procedure cases, various companies and groups in First Amendment and preemption litigation, and insurers and reinsurers in complex coverage litigation and arbitration, amongst other litigation, advocacy, and counseling activities. In recent

years, I have also represented two Relators in qui tam actions under the False Claims Act, and a plaintiff in a civil rights action under 42 U.S.C. § 1983.

5.      I have received several awards and honors over the course of my career.  Recent honors include the Washington, D.C. Administrative/Regulatory Law "Lawyer of the Year" by *The Best Lawyers in America* directory in 2013, being named a "Visionary" by the *Legal Times* in 2012, being named by *The Legal 500* a "recommended lawyer" in Antitrust Law (2009) and in Telecom and Broadcast Transactional Law (2013), being named one of DC's "Super Lawyers" for Antitrust Litigation (2007-2012) and Business Litigation (2013) by *Super Lawyers* magazine, and being recognized by the *Legal Times* as Washington DC's "Leading Food and Drug Lawyer" in 2005.  I regularly publish articles and provide commentary in the areas of antitrust law, constitutional law, food and drug law, and on the subject of tort reform.

6.      Although this case might appear to present a relatively straightforward question of law under the Constitution, the sizeable record Congress compiled and the long history of the Voting Rights Act necessitated becoming expert in thousands of pages of material and dozens of cases.  Several attorneys were necessary to meet the briefing and researching demands of this case.

7.      I relied on the assistance of two partners, Tom McCarthy and Will Consovoy, to run the matter.  Their help in this matter was invaluable.  Their experience and qualifications are set out below.

8.      Tom McCarthy was Of Counsel with the firm when the matter began and has been a Partner since 2012.  He received his law degree, *magna cum laude*, from the George Mason University School of Law in 2001, and his Bachelor of Science degree from the University of Notre Dame in 1995.  Tom is a member of the District of Columbia and Virginia bars.  Tom was previously a law clerk for the Honorable David B. Sentelle, U.S. Court of Appeals for the District of Columbia Circuit, from 2002-2003, and for the Honorable Frank W. Bullock, Jr., U.S. District Court for the Middle District of North Carolina, from 2001-2002.  Tom joined Wiley Rein in 2006; he was an associate at Jones Day from 2003-2006.  Tom concentrates his practice on complex litigation (including constitutional litigation) and appellate litigation.  Prior to litigating this case, Tom submitted amicus curiae briefs to the Supreme Court in two cases involving Section 5 of the Voting Rights Act.  Along with Will Consovoy, Tom is a director of the George Mason University Supreme Court Legal Clinic.

9.      Will Consovoy is a Partner with the firm.  He received his law degree, *magna cum laude*, from the George Mason University School of Law in 2001, and his Bachelor of Arts degree from Monmouth University in 1996.  Will is a member of the District of Columbia and Virginia bars.  Will was previously a law clerk for the Honorable Edith H. Jones, U.S. Court of Appeals for the Fifth Circuit, from 2003-2004, and a law clerk for the 17th Judicial Circuit of Virginia from 2001-2002.  He was an associate with Wiley Rein from 2004 until 2008, when he became a law clerk to the Hon. Clarence Thomas on the Supreme Court of the United States.  He returned to Wiley Rein in 2010.  Will concentrates his practice on complex litigation (including constitutional litigation) and appellate litigation.  Prior to litigating this case, Will submitted an amicus curiae brief to the Supreme Court in a case involving Section 5 of the Voting Rights Act.  While this case was pending, Will also represented the State of Florida in successful

preclearance litigation in the U.S. District Court for the District of Columbia. Along with Tom McCarthy, Will is a director of the George Mason University Supreme Court Legal Clinic.

10.     The Associate members of the litigation team were also qualified to assist in this litigation. Their experience and qualifications are set out below.

11.     Brendan Morrissey is an associate with the firm. He received his law degree, *summa cum laude*, from the University of Akron School of Law in 2005, and a Bachelor of Arts in Journalism degree, *cum laude*, from St. Bonaventure University in 2002. Brendan is a member of the District of Columbia, New York, and Ohio bars. He has been with Wiley Rein since 2006. Prior to joining Wiley Rein, Brendan clerked for the Hon. Alice M. Batchelder, U.S. Court of Appeals for the Sixth Circuit. Since joining the firm, Brendan has been involved in several pieces of major federal court litigation. Prior to litigating this case, Brendan submitted amicus curiae briefs to the Supreme Court in two cases involving Section 5 of the Voting Rights Act. While this case was pending, Brendan also represented the State of Florida in successful preclearance litigation in the U.S. District Court for the District of Columbia.

12.     J. Michael Connolly is an associate with the firm. He received his law degree from the New York University School of Law in 2008, and his Bachelor of Arts degree, with distinction, from the University of Kansas in 2004. Mike is a member of the District of Columbia and Virginia bars. He has been with Wiley Rein since 2010. Prior to joining Wiley Rein, Mike was a law clerk for the Honorable Jerome A. Holmes, U.S. Court of Appeals for the Tenth Circuit, from 2008-2009. Since joining the firm, Mike has been involved in several pieces of major federal court litigation. While this case was pending, Mike represented the State of Florida in successful preclearance litigation in the U.S. District Court for the District of Columbia.

13.     The primary team was assisted at times by other partners and associates with the Firm who were also well-qualified for their roles.

14.     Each Wiley Rein attorney who worked on the matter has a standard hourly billing rate that is charged to all clients in the absence of an alternative fee arrangement.

15.     Wiley Rein attorneys worked on this matter in calendar years 2010 through 2013. For purposes of determining the "reasonableness" of these attorneys' rates, I have focused on calendar year 2012, because that is the most recent year for which we have hourly rate data from comparable firms. Nevertheless, I am aware that Wiley Rein's rates have increased modestly between 2010 and 2013 in a manner similar to yearly increases at other comparable firms in Washington, D.C.

16.     For calendar year 2012, the firm's billing rates ranged from $150 to $305 per hour for legal support personnel, from $305 to $520 per hour for associates, from $220 to $690 per hour for of counsel and consultants, and from $530 to $920 per hour for partners.

17.     The standard billing rates for each member of the litigation team over the course of this litigation are as follows:

3

| Attorney | Grad Date | 2010 Rate | 2011 Rate | 2012 Rate | 2013 Rate |
|---|---|---|---|---|---|
| Rein | 1964 | $850 | $875 | $920 | $950 |
| Consovoy | 2001 | $510 | $560 | $560 | $590 |
| McCarthy | 2001 | $495 | $520 | $545 | $570 |
| Morrissey | 2005 | $445 | $485 | $515 | $535 |
| Connolly | 2008 | $345 | $400 | $445 | $495 |

18. Wiley Rein endeavors to set rates for its attorneys at a level commensurate with the education, skill, and experience of that attorney, as determined by the Washington, DC market of large law firms. My understanding is that Wiley Rein's standard rates are near, if not slightly lower than, the average rate for an attorney of comparable education and experience at other large Washington, DC law firms.

19. I have reviewed a summary of the National Law Journal's 2012 Law Firm Billing Survey, which confirms that Wiley Rein's attorneys' rates are well within the norm for firms based in Washington, D.C. *See* Attachment 1.

| Position | Wiley Rein | Dickstein Shapiro | Hogan Lovells | Patton Boggs | Holland & Knight |
|---|---|---|---|---|---|
| Associates (Range) | $305-$520 | $235-$570 | $310-$655 | $240-$570 | $200-$575 |
| Associates (Median) | $445 | $460 | $465 | $435 | $310 |
| Partners (Range) | $530-$920 | $560-$1,250 | $545-$1,200 | $425-$990 | $315-$985 |
| Partners (Median) | $615 | $700 | $750 | $665 | $560 |

| Associate Year | Wiley Rein | Dickstein Shapiro | Hogan Lovells | Patton Boggs | Holland & Knight |
|---|---|---|---|---|---|
| 1st year | $305 | $235-$305 | $330 | $308 | $240 |
| 5th year | $480 | $380-$515 | $474 | $446 | $330 |
| 8th year | $520 | $455-$570 | $552 | $513 | $405 |

20. Wiley Rein's accounting department keeps a running, accurate record of all time and charges billed to this matter in the ordinary course of business. That information is reported on a Billing Information Memorandum ("BIM"). All timekeepers, including attorneys, are required to submit their time weekly to ensure that all timekeeping records are contemporaneous with the performance of the work.

21. The BIM for this matter begins on March 9, 2010, and is current through October 10, 2013. The matter is still open and attorneys continue to bill time to the matter. The total Wiley Rein fees for this matter on the BIM, as of October 10, 2013, is $2,436,616.25. Wiley Rein

timekeepers (attorneys, paralegals, and research staff) have billed 4,632.50 hours to this matter to date. The average hourly rate for work performed on this matter is therefore $525.98 per hour.

22. In many instances, the description of work performed in the BIM is privileged or confidential material or work product. We therefore cannot release the BIM publicly without substantial redactions or edits. Moreover, the short period of time between the entry of judgment and the date on which Shelby County's fee petition must be filed has not allowed us to carefully review the BIM to ensure that all privileged or otherwise protected information is removed or redacted. If the Court or Defendants deem it necessary to review the specific time entries and descriptions of work, we could certainly review and redact the BIM.

23. Nevertheless, a complete and accurate BIM exists, and the current fee request is based on the attorneys' actual hours worked and their actual hourly rates at the time the work was performed. In an effort to provide as much detail as possible short of releasing the BIM itself, I have set out below the billings on the matter for each month this matter has been open, along with a general description of the work being performed during that month.

| Month of Service | Hours | Total | General Description of Work Performed |
| --- | --- | --- | --- |
| 3/09/2010 - 3/31/2010 | 71.75 | $34,957.50 | Case investigation; drafting complaint; drafting summary judgment papers |
| 4/01/2010 - 4/30/2010 | 311.00 | $147,848.75 | Drafting and filing complaint; drafting summary judgment papers |
| 5/01/2010 - 5/31/2010 | 109.75 | $50,381.25 | Drafting summary judgment papers |
| 6/1/2010 - 6/30/2010 | 303.25 | $124,038.75 | Drafting and filing summary judgment papers; response to intervention motions; response to DOJ 56(f) |
| 7/01/2010 - 7/31/2010 | 29.75 | $12,418.75 | Response to 56(f); intervention |
| 8/01/2010 - 8/31/2010 | 8.25 | $3,365.00 | Case management and planning |
| 9/01/2010 - 9/30/2010 | 58.75 | $28,852.50 | Intervenors' 56(f); status conference and follow-up |
| 10/01/2010 - 10/31/2010 | 79.75 | $38,465.00 | Preparation of facts and evidence for full summary judgment briefing; case management and planning |
| 11/01/2010 - 11/30/2010 | 330.25 | $149,245.00 | Preparation of facts and evidence for full summary judgment briefing; case management and planning; begin drafting response to summary judgment |

| | | | |
|---|---|---|---|
| | | | oppositions/cross-motions |
| 12/01/2010 - 12/31/2010 | 336.25 | $146,997.50 | Drafting response to summary judgment oppositions/cross-motions; statement of material facts |
| 1/01/2011 -1/31/2011 | 119.75 | $68,018.75 | Preparing internal responses to cross-motion replies; oral argument preparation |
| 2/01/2011 - 2/28/2011 | 264.50 | $135,080.00 | Oral argument preparation; oral argument; researching and drafting supplemental brief |
| 3/01/2011 - 3/31/2011 | 5.75 | $1,972.50 | Case management and planning |
| 4/01/2011 - 4/30/2011 | 1.00 | $520.00 | Case management and planning |
| 5/01/2011 - 5/31/2011 | 5.75 | $2,965.00 | Case management and planning |
| 6/01/2011 - 6/30/2011 | 7.50 | $4,106.25 | Case management and planning; response to DOJ supplemental filing |
| 7/01/2011 - 7/31/2011 | 11.75 | $7,230.00 | Case management and planning; analysis of interplay with other pending cases |
| 8/01/2011 - 8/31/2011 | 8.25 | $6,021.25 | Case management and planning; analysis of interplay with other pending cases |
| 9/01/2011 - 9/30/2011 | 86.50 | $44,817.50 | District court opinion issued; preparations for appeal to D.C. Circuit |
| 10/01/2011 - 10/31/2011 | 240.25 | $110,773.75 | Beginnings of D.C. Circuit appeal; motion to expedite appeal; drafting opening appellate brief |
| 11/01/2011 - 11/30/2011 | 36.50 | $18,591.25 | File opening appellate brief; amicus efforts |
| 12/01/2011 - 12/31/2011 | 275.50 | $136,668.75 | Draft reply brief; begin oral argument preparation |
| 1/01/2012 - 1/31/2012 | 77.25 | $53,606.25 | Oral argument preparation and argument |
| 2/01/2012 - 2/29/2012 | 13.25 | $8,953.75 | Oral-argument follow-up; case management and planning |
| 3/01/2012 - 3/31/2012 | 11.75 | $7,671.25 | Rule 28(j) submission; DOJ supplemental filing; case management |

6

|  |  |  | and planning |
|---|---|---|---|
| 4/01/2012 - 4/30/2012 | 0 | $0.00 | No activity |
| 5/01/2012 - 5/31/2012 | 41.50 | $25,891.25 | Court of Appeals opinion; first steps towards certiorari |
| 6/01/2012 - 6/30/2012 | 145.75 | $86,491.25 | Researching and drafting certiorari petition; activities related to seeking certiorari |
| 7/01/2012 - 7/31/2012 | 248.50 | $150,288.75 | Researching and drafting certiorari petition; activities related to seeking certiorari; coordination of amicus efforts |
| 8/01/2012 - 8/31/2012 | 32.00 | $18,332.50 | Case management and planning; coordination of amicus efforts |
| 9/01/2012 - 9/30/2012 | 46.25 | $27,152.50 | Review briefs in opposition and draft reply |
| 10/01/2012 - 10/31/2012 | 64.75 | $38,598.75 | Draft and file certiorari reply; case management and planning |
| 11/01/2012 - 11/30/2012 | 129.75 | $73,550.00 | Certiorari granted; development of merits strategy; researching and drafting opening merits brief; activities associated with merits filing; amicus coordination |
| 12/01/2012 - 12/31/2012 | 336.50 | $185,688.75 | Drafting and filing merits brief and appendix; amicus coordination |
| 1/01/2013 - 1/31/2013 | 106.50 | $65,978.75 | Preparation for reply filing and argument; amicus coordination |
| 2/01/2013 - 2/28/2013 | 563.00 | $349,273.75 | Draft and file merits reply brief; prepare for oral argument; moot courts; Supreme Court oral argument |
| 3/01/2013 - 3/31/2013 | 10.75 | $6,068.75 | Post-argument follow-up issues |
| 4/01/2013 - 4/30/2013 | 1.00 | $532.50 | Post-argument follow-up issues |
| 5/01/2013 - 5/31/2013 | 9.25 | $5,417.50 | Post-argument follow-up issues |
| 6/01/2013 - 6/30/2013 | 30.00 | $19,030.00 | Post-argument follow-up issues; Supreme Court opinion and related activities; costs |

|  |  |  | issues |
| --- | --- | --- | --- |
| 7/01/2013 - 7/31/2013 | 12.50 | $6,207.50 | Remand and cost issues; attorney's fee issues |
| 8/01/2013 - 8/31/2013 | 29.25 | $16,930.00 | Remand and mandate issues and filing; attorney's fee and cost issues |
| 9/01/2013 - 9/30/2013 | 16.25 | $8,783.75 | Remand and mandate issues and filing; attorney's fee and cost issues |
| 10/01/2013 - 10/10/2013 | 13.00 | $8,833.75 | Remand and mandate issues and filing; attorney's fee and cost issues |

24. I am aware of the requirement that an attorney exercise billing judgment, such that fees not billed to a client should also not be billed to an adversary under a fee-shifting statute.

25. In that vein, I determined that we should reduce our fee request to avoid a contention about possible inefficiencies. I am aware of cases that have approved of an across-the-board reduction to account for perceived inefficiencies, and have determined that a 10% reduction is appropriate to take account of the possibility of such issues.

26. I also determined that we should reduce our fee request to take account of the possibility that attorneys or paralegals performed clerical tasks. I am aware of cases that have approved of an across-the-board reduction to account for such issues, and have determined that a 5% reduction is appropriate to take account of that possibility.

27. Finally, I further reduced our fee request to the round figure of $2 million in an effort to be exceptionally conservative. This yields a blended rate of approximately $431.73 per hour.

28. I believe that fee reimbursement of $2 million is extremely reasonable given the effort required to litigate this case from complaint through successful resolution in the Supreme Court. As a point of reference, the University of Texas paid Latham & Watkins a $977,000 flat fee to file one brief and argue before the Supreme Court in a losing effort in *Fisher v. University of Texas at Austin*.

29. It is also reasonable given the highly favorable result Shelby County obtained: Shelby County not only vindicated an important constitutional principle, but literally saved thousands of formerly covered jurisdictions millions (if not billions) of dollars in Section 5 compliance costs. For example, Merced County, California submitted an *amicus curiae* brief in support of neither party before the Supreme Court that disclosed that it spent $1 million over ten years in Section 5 compliance activity, and another $350,000 to bail out of coverage. Shelby County spends approximately $5000 for each preclearance submission it makes, and it has made at least 72 submissions since April 1998. Additionally, South Carolina spent over $3.5 million to obtain preclearance of its recently enacted voter ID law prior to the Supreme Court's decision in *Shelby*

8

*County*. The magnitude of the victory in both constitutional and financial terms cannot be overstated.

30. Wiley Rein has also incurred $46,569.82 in costs attributable to this matter. These costs include database research services (e.g., Westlaw and Lexis), PACER charges, filing fees, the cost of obtaining transcripts, transportation, courier services, office copying charges, outside printing and duplication, filing fees, and postage. These expenditures are ordinarily billed to Wiley Rein's clients. Wiley Rein will be submitting a Bill of Costs that seeks costs for a portion of these charges, including filing fees, and has been awarded its costs by the Supreme Court for a portion of its outside duplicating costs. Major "reasonable litigation expenses" not reimbursable through the Bill of Costs include approximately $22,000 in outside printing and duplicating costs, $10,500 in electronic database research fees, $400 in PACER fees, $577 for transcripts, and $92 in office copying charges. Instead of itemizing these expenditures, Shelby County seeks a flat reimbursement of $10,000 for these expenditures.

I declare under penalty of perjury that the foregoing is true and correct.

10/25/13
DATE

Bert W. Rein

9

# ATTACHMENT 1

ALM LEGAL INTELLIGENCE

Copyright © ALM Media Properties, LLC. All rights reserved.

## 2012 NLJ Billing Survey

| Fiscal Year | Firm Name | Location | Partner Billing Rate High | Partner Billing Rate Low | Associate Billing Rate High | Associate Billing Rate Low | Associate Billing Rate Average | Partner Billing Rate Average | Firmwide Billing Rate Average | Associate Billing Rate Med | Partner Billing Rate Med | Firmwide Billing Rate Med | NLJ Billing Source | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2012 | Dickstein Shapiro | Washington | $1250.00 | $560.00 | $570.00 | $235.00 | $460.00 | $700.00 | | 460 | 700 | 580 | 2012 NLJ Billing Survey | |
| 2012 | Hogan Lovells | Washington | $1200.00 | $545.00 | $655.00 | $310.00 | $465.00 | $750.00 | | 465 | 750 | 625 | 2012 NLJ Billing Survey | |
| 2012 | Holland & Knight | Washington | $985.00 | $315.00 | $575.00 | $200.00 | $310.00 | $560.00 | | 310 | 560 | 490 | 2012 NLJ Billing Survey | |
| 2012 | Patton Boggs | Washington | $990.00 | $425.00 | $570.00 | $240.00 | $435.00 | $665.00 | | 435 | 665 | 550 | 2012 NLJ Billing Survey | |

Copyright 2011 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

1

Dow Corning Breast Implant Settlement Claim Deadline Approaching.
Click here for more information.
Legal Notice                                              www.DowCorningExplantationClaim.com

An ALM Web site



THE NATIONAL LAW JOURNAL
with D.C. news from Legal Times

Subscribe | Sign Out | My Account

| NATIONAL NEWS | Washington News |

| Home | Legal Business | Law Schools | Columns | Verdicts | Opinion | Video Center | Blog |

NLJ Home > Law firms report their billing rates by associate class

# LAW FIRMS REPORT THEIR BILLING RATES BY ASSOCIATE CLASS

A sortable sampling of rates charged by law firms that establish them by associate class.

Like 0    Tweet 0    0    Share



2012 Billing Survey

| Firm | Largest U.S. office* ▲ | Average FTE attorneys* | 1st Year | 5th Year | 8th Year |
|---|---|---|---|---|---|
| Saul Ewing | Philadelphia | 219 | $225-$240 | $265-$300 | $295-$360 |
| Lewis and Roca | Phoenix | 183 | $225 | $365 | $450 |
| Stoel Rives | Portland, Ore. | 374 | $213 | $296 | $378 |
| Harris Beach | Rochester, N.Y. | 189 | $175 | $250 | $275 |
| Sedgwick | San Francisco | 343 | $248 | $271 | $278 |
| Perkins Coie | Seattle | 747 | $314 | $381 | $446 |
| Bryan Cave | St. Louis | 884 | $200-$320 | $265-$400 | $315-$525 |
| Husch Blackwell | St. Louis | 520 | $214 | $240 | $268 |
| Hiscock & Barclay | Syracuse, N.Y. | 165 | $175 | $205 | $225 |
| Shumaker, Loop & Kendrick | Toledo, Ohio | 219 | $220 | | |
| Crowell & Moring | Washington | 445 | $310 | N/A | N/A |
| Dickstein Shapiro | Washington | 343 | $235-$305 | $380-$515 | $455-$570 |
| Hogan Lovells | Washington | 2,253 | $330 | $474 | $552 |
| Holland & Knight | Washington | 908 | $240 | $330 | $405 |
| Patton Boggs | Washington | 491 | $308 | $446 | $513 |

* Full-time equivalent attorney numbers and largest U.S. office are from the NLJ 350 published in March and April 2012.