**SAM P. ISRAEL, P.C.**
Sam P. Israel, Esq. (SPI 0270)
Eleonora Zlotnikova, Esq. (EZ8814)
180 Maiden Lane, 6th Floor
New York, New York 10038
T: (646) 787-9880 | F: (646) 787-9886
*Attorneys for Defendant Supap Kirtsaeng*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| John Wiley & Sons, Inc. | : | |
| Plaintiff, | : | |
| | : | |
| | : | Civil Action No. 08-cv-7834 (DLC) |
| v. | : | |
| | : | |
| | : | |
| Supap Kirtsaeng *et al.* | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SUPAP
KIRTSAENG'S MOTION FOR AN AWARD OF ATTORNEYS' FEES
<u>PURSUANT TO THE NOVEMBER 3, 2016 ORDER</u>**

# TABLE OF CONTENTS

Table of Authorities .......................................................................................................... ii

I. **PRELIMINARY STATEMENT.** ................................................................. 1

II. **BACKGROUND FACTS AND PROCEDURAL POSTURE.** ..................... 2

III. **ARGUMENT.** ............................................................................................... 7

    A. LEGAL STANDARD UNDER THE NEW PRECEDENT. ................................ 7

    B. KIRTSAENG SHOULD BE AWARDED ATTORNEY'S FEES UNDER THE
    PREVAILING STANDARD. ............................................................................ 9

        1. *It Is Undisputed That Kirtsaeng Satisfied the Sole Requirement of Section 505
        by Prevailing on the Merits.* ............................................................................ 9

        2. *Consideration of All Relevant Circumstances in This Case Favors a Fee
        Award.* ........................................................................................................... 10

            (i) *Wiley's Overall Position in the Litigation was* **Less Than** *Objectively
            Reasonable, and This Factor Does Not Weigh in Wiley's Favor.* ..... 9

            (ii) *Wiley's Improper Motive to Use the Copyright Act in Order to Assert
            Downstream Control Over the Distribution of Textbooks Even After
            It Profited From the First Sale Weighs in Favor of Kirtsaeng.* ....... 11

            (iii) *Considerations of Compensation and Deterrence Strongly Favor an
            Award to Kirtsaeng.* ........................................................................ 13

            (iv) *Wiley's Overaggressive Assertion of Its Copyright Monopoly in This
            and Similar Litigations Warrants Some Deterrence Through a Fee
            Award.* ........................................................................................... 16

            (v) *Litigating Novel or Close Cases Advances the Purposes of the
            Copyright Act and Does Not Raise a Presumption Against Awarding
            Fees.* .............................................................................................. 18

            (vi) *The Degree of Kirtsaeng's Success Favors a Fee Award.* ............... 19

            (vii) *The Court Should Consider the Financial Disparity of the Parties and
            the Ruinous Effect of Wiley's Litigation on Kirtsaeng's Enterprise as
            Factors Weighing in Favor of a Fee Award to Kirtsaeng* ................ 19

IV. **CONCLUSION** ........................................................................................... 20

i

# TABLE OF AUTHORITIES

## Cases

*Assessment Techs. of WI, LLC v. Wire Data, Inc.,*
   361 F.3d 434 (7th Cir. 2004) .....................................................................................13, 17

*Baker v. Urban Outfitters, Inc.,*
   431 F. Supp.2d 351 (S.D.N.Y. 2006) ........................................................................13, 17

*Blue Moon Media Grp., Inc. v. Field,*
   U.S. Dist. LEXIS 108066 (E.D.N.Y. Apr. 11, 2011) .......................................................15

*Brown v. Perdue,*
   2006 U.S. Dist. LEXIS 66563 (S.D.N.Y. Sept. 15, 2006) ................................................19

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.,*
   546 F. Supp. 2d 120 (S.D.N.Y. 2008)................................................................................19

*Crown Awards, Inc. v. Discount Trophy & Co.,*
   564 F. Supp. 2d 290 (S.D.N.Y. 2008)................................................................................13

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
   539 U.S. 23 (2003) ............................................................................................................10

*FM Indus., Inc. v. Citicorp Credit Servs., Inc.,*
   614 F.3d 335 (7th Cir. 2010) ............................................................................................13

*Fogerty v. Fantasy,*
   510 U.S. 517 (1994) .................................................................................................. *passim*

*John Wiley & Sons, Inc. v. Doe Nos. 1-44,*
   2012 WL 3597075 (S.D.N.Y. Aug. 21, 2012) ...............................................................2, 3

*John Wiley & Sons, Inc. v. Kirtsaeng,*
   654 F.3d 210 (2d Cir. 2011) ...............................................................................................4

*John Wiley & Sons, Inc. v. Kirtsaeng,*
   713 F.3d 1142 (2d Cir. 2013)...............................................................................................9

*John Wiley & Sons, Inc. v. Kirtsaeng,*
   2013 U.S. Dist. LEXIS 179113 (S.D.N.Y. Dec. 20, 2013) ...................................... *passim*

*John Wiley & Sons, Inc. v. Kirtsaeng,*
   605 F. App'x 48 (2d Cir. 2015) .........................................................................................15

*Kirtsaeng v. John Wiley & Sons, Co.*,
    133 S. Ct. 1351 (2013) ................................................................................ *passim*

*Kirtsaeng v. John Wiley & Sons, Co.*,
    136 S. Ct. 1979 (2016) ................................................................................ *passim*

*LV v. NYC Dep't of Educ.*,
    700 F. Supp. 2d 510 (S.D.N.Y. 2010) .............................................................15

*Pyatt v. Raymond*,
    2012 U.S. Dist. LEXIS 58879 (S.D.N.Y. Apr. 25, 2012) ................................14

*Reiter v. MTA NYC Transit Auth.*,
    457 F.3d 224 (2d Cir. 2006) ......................................................................15, 16

*Soba v. McGoey*,
    761 F. Supp. 273 (S.D.N.Y. 1991) .................................................................15

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*,
    74 F.3d 488 (4th Cir. 1996) ...........................................................................17

*Torah Soft Ltd. v. Drosnin*,
    2001 U.S. Dist. LEXIS 19217 (S.D.N.Y. Nov. 27, 2001) .........................9, 12, 16, 17, 19

*Universal City Studios, Inc. v. T-Shirt Gallery, Ltd.*,
    634 F. Supp. 1468 (S.D.N.Y. 1986) ...............................................................10

*Vargas v. Transeau*,
    2008 U.S. Dist. LEXIS 59344 (S.D.N.Y. Aug. 6, 2008) .................................15

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
    2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003) .....................................11, 13, 14

## Constitution and Statutes

U.S. Const., art I § 8, cl. 8 ......................................................................................8

17 U.S.C. § 109 ......................................................................................................4

17 U.S.C. § 505 ............................................................................................. *passim*

## Miscellaneous

Gary Shapiro, *Supreme Court Gives American Consumers Victory Over Copyright Owners in Kirtsaeng vs. John Wiley & Sons*, Forbes, Mar. 20, 2013. .........................................................14

iii

Defendant Supap Kirtsaeng ("**Kirtsaeng**" or the "**Defendant**"), by and through his undersigned counsel, submits this memorandum of law, in support of his motion pursuant to Section 505 of the United States Copyright Act (17 U.S.C. § 505), for an award of attorneys' fees and reimbursement of litigation expenses against plaintiff John Wiley & Sons, Inc. ("**Wiley**" or "**Plaintiff**"), in light of the recent decision in *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016), and pursuant to the Court's November 3, 2016 Order. The Defendant states as follows:

## I.    PRELIMINARY STATEMENT.

After years of defending a copyright infringement lawsuit brought by a textbook manufacturing magnate, the U.S. Supreme Court vindicated Kirtsaeng's right to re-sell textbooks in the United States that he lawfully purchased overseas. *Kirtsaeng v. John Wiley & Sons, Inc. ("Kirtsaeng I")*, 133 S. Ct. 1351 (2013). Yet, despite the landmark victory, Kirtsaeng was left holding the bag with over $90,000 in attorney's fees and costs that he incurred in persisting with his ultimately meritorious defense. In remanding this case for the second time, the Supreme Court encouraged this Court to reassess Kirtsaeng's fee application in light of its recent decision in *Kirtsaeng v. John Wiley & Sons, Inc. ("Kirtsaeng II")*, 136 S. Ct. 1979 (2016), which clarified the legal standard of review applied to fee applications under Section 505 of the Copyright Act.

All that is *required* for Kirtsaeng to be entitled to fees is that he prevails on the merits, and Kirtsaeng not only prevailed on the merits of his defense, but achieved a landmark victory that helped delineate the boundaries of copyright law and saved a trillion-dollar industry from potential collapse. In *Kirtsaeng II*, the U.S. Supreme Court unanimously reversed and remanded the lower court's decision that denied Kirtsaeng's fee application, while also clarifying how certain equitable factors should be analyzed in light of the Copyright Act's core purpose of enriching the general public through access to creative works. As explained below, most (if not all) of the factors set

1

forth in *Fogerty v. Fantasy*, 510 U.S. 517 (1994) and further illuminated in *Kirtsaeng II, supra,* favor a fee award to Kirtsaeng. If not Kirtsaeng, then who would be the exemplary defendant worthy of a fee award upon prevailing on a meritorious defense in a landmark case, despite the perceived reasonableness of a plaintiff's position?

## II.   BACKGROUND FACTS AND PROCEDURAL POSTURE.

*Kirtsaeng's Successful Defense and Clarification of the First Sale Doctrine.*

By way of a brief summary of the facts underlying this dispute, in 2008 Wiley sued a foreign graduate student, living in California, in the Southern District of New York for selling copies of textbooks that Wiley manufactured abroad for less money than the Plaintiff offered them in the United States, asserting causes of action for copyright infringement, trademark infringement, and unfair competition under New York law (the latter, clearly preempted by the Copyright Act). Compl., ECF No. 1. Wiley alleged that the Defendant's importation and modest online sales of textbooks competed unfairly with Wiley's international, multimillion-dollar publishing conglomerate. Though Wiley amended its complaint to eliminate the trademark contentions (effectively conceding that they altogether lacked merit), the Plaintiff persisted with the preempted unfair competition claim, ultimately withdrawing that claim on the eve of trial. ECF No. 41 (Joint Pretrial Order).

Wiley is no stranger to overaggressive prosecutions of copyright claims, having been accused of "participating in a shake-down campaign, where it initiates sham legal proceedings based on tenuous allegations, against anonymous Defendants who deny any wrongdoing, in the hopes of extracting quick settlements." *John Wiley & Sons, Inc. v. Doe Nos. 1-44*, 2012 WL 3597075 (S.D.N.Y. Aug. 21, 2012). The Plaintiff has engaged in copious parallel lawsuits, casting a wide net on impecunious defendants, who were often pressured to accept injunctions and

settlements in order to avoid prohibitively expensive legal fees entailed in pursuing meritorious defenses.[1] Meanwhile, Wiley sought to chill the competition in secondary markets in which consumers (most often, students), resell their used textbooks.

And here, Wiley persisted with its copyright infringement claim against Kirtsaeng—the Defendant being the latest victim in a string of bullying lawsuits Wiley had been prosecuting against mostly foreign students studying in the U.S. in order to eliminate competitive sales of cheaper foreign versions (however modest they might be). Before this goliath was defeated, Wiley pulled no punches, having commenced contempt proceedings in which it accused Kirtsaeng and his counsel of having *conspired* to deplete its anticipated recovery by withdrawing a paltry sum from his bank account (an amount which he required to live) at a time when the Plaintiff obtained an injunction against such withdrawals. *See* Memorandum of Law in Support of Defendant Supap Kirtsaeng's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Kirtsaeng Br,"), at 4-5, ECF No. 96.  In this context, and with unbridled aggression, the Plaintiff interposed multiple sets of contempt-related discovery demands, third party subpoenas, conducted a contempt deposition of the Defendant, and Wiley even sought to compel the Defendant's counsel to give testimony in open court about his client and whether counsel himself had a hand in the alleged contempt. *See* Notice of Motion *In Limine* to Preclude Testimony of Defendant's Counsel

---

[1] *See, e.g.,* Compl., *John Wiley & Sons, Inc., v. John Doe Nos. 1-44*, 2012 WL 870299 (S.D.N.Y. 2012) (No. 12 CV 1568); Amended Complaint, *John Wiley & Sons, Inc., v. Jeff Ng, Ralph Mohr, Robert Carpenter, and Xiaoshu Chen*, 2012 WL 1611326 (S.D.N.Y. 2012)(No. 11 Civ. 7627 (WHP)); Compl., *John Wiley & Sons, Inc., v. John Doe Nos. 1-21*, 2012 WL 2566389 (S.D.N.Y. 2012)(No. 12 CV 4730); Compl., *John Wiley & Sons, Inc., v. John Doe Nos. 1-35*, 2012 WL 1389735 (S.D.N.Y. 2012)(No. 12 CV 2968); Compl., *John Wiley & Sons, Inc., v. John Doe Nos. 1-30*, 2012 WL 1834871 (S.D.N.Y. 2012)(No. 12 CV 3782); Am. Compl., *John Wiley & Sons, Inc., v. Michelle Williams, Nella Gertsenzon, Christian Figorito, Faye Albus, Priscilla Reyes, and Isabel Carrion*, 2012 WL 3019463 (S.D.N.Y. 2012)(No. 12 Civ. 0079(PKC)); Am. Compl., *John Wiley & Sons, Inc., v. Steven Swancoat, John Doe Nos. 15 and Jane Doe Nos. 15*, 2009 WL 956206 (S.D.N.Y. 2009)(No. 108CV05672); Am. Compl., *John Wiley & Sons, Inc., v. Leo Shumacher*, 2009 WL 3219590 (S.D.N.Y. 2009) (No. 109CV02108). Kirtsaeng Br., at 16-17 & n.4 (collecting cases), ECF No. 96.

3

at Contempt Hearing, ECF No. 50. The contempt discovery was harassing and needlessly invasive of the attorney-client relationship. Ultimately, after all of the intrusive demands, costs and threats of criminal liability—in connection with the transfer of a mere $6,000—the Court denied Wiley's motion finding no evidence that would support a finding of civil contempt. Mem. & Order, ECF No. 61.

Since the Court rejected Kirtsaeng's "first sale" defense (17 U.S.C. § 109), Plaintiff prevailed at trial. An injunction was entered preventing Kirtsaeng from carrying on his enterprise. Permanent Injunction, ECF No. 72. Wiley then engaged in expansive post-judgment discovery, seeking to freeze Kirtsaeng's bank accounts and seize the few items possessed by the Defendant while living in the United States, including a personal computer that Kirtsaeng needed to complete his doctoral thesis, a printer, and a set of golf-clubs. *See* Mot., ECF No. 78. By the time that a *writ of certiorari* was filed in this case, Kirtsaeng had paid $90,000 in attorney's fees, owed an additional $26,285, and returned penniless to Thailand. Believing in Kirtsaeng's innocence, Kirtsaeng and his counsel remained undeterred and appealed. The Court of Appeals affirmed, *see John Wiley & Sons, Inc. v. Kirtsaeng*, 654 F.3d 210 (2d Cir. 2011), and denied *rehearing en banc* on October 13, 2011. On December 5, 2011, the Defendant filed a petition for *writ of certiorari* which was granted on April 16, 2012, this culminating in the Opinion of the United Sates Supreme Court conclusively reversing the lower court's decision on the First Sale Doctrine's applicability to this case.

### *Kirtsaeng's Application for Attorney's Fees and Second Victory in the Supreme Court.*

Kirtsaeng's efforts brought about a landmark Supreme Court decision, which established a precedent that now clearly defines the boundaries of the First Sale Doctrine and resolves a long history of discourse among courts on the application of this defense. Following his victory,

Kirtsaeng applied for attorney's fees under Section 505 of the U.S. Copyright Act (17 U.S.C. § 505), which provides for the award of reasonable costs and attorney's fees to prevailing litigants. ECF Nos. 93-96. Kirtsaeng argued that he satisfied the only requirement of Section 505 by prevailing on the merits, and the balance of the equitable factors exemplified in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) tipped in his favor. Specifically, Kirtsaeng argued that his successful defense vindicated not only his, but the public's interest in preserving the First Sale Doctrine, thereby also advancing the purposes of the Copyright Act. Kirtsaeng further argued that the high degree of success he obtained, the need to compensate an impecunious defendant (such as Kirtsaeng) and deter Wiley's overaggressive assertions of copyright claims, as well as the imbalance of wealth and power between Wiley and Kirtsaeng all favored an award of reasonable attorney's fees to Kirtsaeng. *See* Kirtsaeng Br., at 8-24, ECF No. 96.

This Court denied Kirtsaeng's application and the Second Circuit affirmed, albeit questioning certain aspects of the lower court's reasoning, such as the consideration of Kirtsaeng's counsel's *pro bono* representation during certain parts of the litigation. In denying Kirtsaeng's fee petition, the lower Court measured all *Fogerty* factors against an insurmountable weight assigned to what the Court perceived to be the "objective reasonableness" of Wiley's copyright claim, and noted that the *pro bono* representation Kirtsaeng received at the Supreme Court level weighed heavily against granting a fee award. *John Wiley & Sons, Inc. v. Kirtsaeng*, 2013 U.S. Dist. LEXIS 179113 (S.D.N.Y. Dec. 20, 2013) (Pogue, J.) *vacated and remanded by, Kirtsaeng II*, 136 S. Ct. 1979. The Supreme Court granted certiorari to "resolve disagreement in the lower courts about how to address an application for attorney's fees in a copyright case." *Kirtsaeng II,* 136 S. Ct. at 1984 (agreeing with both Wiley and Kirtsaeng that additional guidance was needed to clarify the fees standard and interpretative analysis of *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

A unanimous Supreme Court vacated the judgment of the Second Circuit, rejecting the notion that the reasonableness of the losing party's position raises a presumption *against* granting attorney's fees. In its comprehensive opinion, the Supreme Court clarified the analysis in *Fogerty* and held that, while the "objective reasonableness" factor should be given substantial weight, district courts in the Second Circuit may have placed *too* great an emphasis on this factor, "turning 'substantial' into more nearly 'dispositive' weight." *Kirtsaeng II,* 136 S. Ct. at 1989. It cautioned that, in placing a substantial weight on the reasonableness factor, district courts should take care not to inadvertently convert it into an insurmountable obstacle for the applicant. Beyond this admonition, the Supreme Court went on to describe how each of the other *Fogerty* factors should be analyzed, and explained that courts should evaluate *all* relevant factors, not just those expressed in *Fogerty.*

The Supreme Court remanded the case and directed the Court to "take another look at Kirtsaeng's fee application" and evaluate it "consistent with this analysis." *Kirtsaeng II,* 136 S. Ct. at 1989. In so doing, the Supreme Court noted that "Kirtsaeng has raised serious questions" about the centrality of the objective reasonableness factor in the Court's assessment of fee shifting. *Id.* And in this regard, the Supreme Court directed the Court "take another look at Kirtsaeng's fee application" (*id.*) not so that this Court could simply repeat its prior conclusion—otherwise, the Supreme Court would have simply affirmed the decision below—but to allow the Court an opportunity to reassess Kirtsaeng's fee application consistent with the now-clarified standard.[2]

---

[2] The Supreme Court also did not "intimate that the District Court should reach a different conclusion," but not because it necessarily agreed with the Court's denial of fees. Rather, the Supreme Court's review was limited to clarifying the legal standard under Section 505 when it came to "to resolv[ing] disagreement in the lower courts about how to address an application for attorney's fees in a copyright case." *See Kirtsaeng II*, 136 S. Ct. at 1984.

6

### III.   ARGUMENT.

### A.  LEGAL STANDARD UNDER THE NEW PRECEDENT.

Section 505 of the Copyright Act provides for the award of reasonable costs and attorneys'

fees to prevailing litigants:

> In any civil action under this title, the court in its discretion may
> allow the recovery of full costs by or against any party other than
> the United States or an officer thereof. Except as otherwise provided
> by this title, the court may also award a reasonable attorney's fee to
> the prevailing party as part of the costs.

17 U.S.C. § 505. Copyright defendants, when prevailing parties, are as entitled to an award of fees

under this provision as are copyright plaintiffs under the statutory "evenhanded" approach.

*Fogerty*, 510 U.S. 517. In *Fogerty*, the Supreme Court exemplified certain nonexclusive factors

that lower courts should consider in connection with their exercise of equitable discretion under

Section 505. *Id.* at 534 n.19 (listing, as examples, "frivolousness, motivation, objective

unreasonableness (both in the factual and in the legal components of the case) and the need in

particular circumstances to advance considerations of compensation and deterrence"). In the

decision below, the Court examined the *Fogerty* factors but not on their own terms; instead, each

of the factors was measured against the perceived reasonableness of Wiley's copyright claim,

which ultimately led the Court to conclude that none of them outweighed the dispositive weight

assigned to the objective reasonableness factor. *See John Wiley & Sons, Inc.*, 2013 U.S. Dist.

LEXIS 179113.

In *Kirtsaeng II*, the Supreme Court clarified the standard set forth in *Fogerty*, explaining

that courts are required to analyze all relevant circumstances, on their own terms, which leaves

plenty of room for a fee award even when a losing party's position was not objectively

unreasonable. *Kirtsaeng II*, 136 S. Ct.1989 The Court's discretion under Section 505 is cabined

by two restrictions: (1) that fees may not be awarded as a matter of course, and (2) "a court may

not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* at 1985 (citing *Fogerty*, 510 U.S. at 527 [internal quotations omitted]). The mandate requiring equal treatment of plaintiffs and defendants arises from the Copyright Act's ultimate goal of "enriching the general public through access to creative works." *Fogerty*, 510 U.S. at 527; U.S. Const., Art. I § 8, cl. 8. A defendant who prevailed on a meritorious defense to a copyright infringement claim, such as Kirtsaeng, furthers the purposes of the Copyright Act as much as a plaintiff who *successfully* defends her copyrights. As the unanimous Court explained, "[t]hat means in any given case a court may award fees even though the losing party offered reasonable arguments (or, conversely, deny fees even though the losing party made unreasonable ones)." *Kirtsaeng II,* 136 S. Ct. at 1988-89 (providing examples of situations where fees may be awarded despite the reasonableness of the parties' positions).

In rejecting the notion that "a finding of reasonableness raises a presumption *against* granting fees," the *Kirtsaeng II* court also went on to explain how a district court must structure its analysis and what it may conclude from its review of relevant factors. *Kirtsaeng II,* 136 S. Ct. at 1989 (noting that this Court must view "all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals."). For example, Chief Justice Roberts was seriously troubled by Wiley's intrusive inquiry into the *pro bono* aspect of Kirtsaeng's representation at the Supreme Court, and noted that the relationship between a party and its counsel should not necessarily factor into the fees analysis. As we explain below, after considering all relevant factors on their own terms, the Court may—and should—award fees even if determines that Wiley advanced an objectively reasonable litigation position.

**B. KIRTSAENG SHOULD BE AWARDED ATTORNEY'S FEES UNDER THE PREVAILING STANDARD.**

*1.     It Is Undisputed That Kirtsaeng Satisfied the Sole Requirement of Section 505 by Prevailing on the Merits.*

The First Sale Doctrine was a complete defense to Wiley's copyright infringement claim. *John Wiley & Sons, Inc. v. Kirtsaeng*, 713 F.3d 1142, 1143 (2d Cir. 2013) ("Kirtsaeng's liability was premised on the inapplicability of the first sale doctrine to copyrighted works manufactured abroad .… In light of the Supreme Court's holding that the first sale doctrine does apply to such works, thus providing Kirtsaeng with a valid defense to copyright infringement, the District Court's judgment is REVERSED, and the cause is REMANDED for such further proceedings as may be appropriate prior to entry of final judgment."). Kirtsaeng is the "prevailing party" within the meaning of Section 505. Therefore, he has satisfied the only statutory requirement for a fee award.

*2.     Consideration of All Relevant Circumstances in This Case Favors a Fee Award.*

In *Kirtsaeng II*, the Supreme Court opined that lower courts should consider all relevant factors, individually, when deciding whether to award fees to the prevailing litigant. *Kirtsaeng II*, 136 S. Ct. at 1989. Those factors include (but are not limited to): the need for compensation and deterrence, financial disparity among the parties, objective reasonableness of the losing party's overall position in litigation, motivation, the degree of success obtained, and any other factor that the Court deems relevant to its decision. *See id.* at 1988-89; *Fogerty*, 510 U.S. at 534 n.19.

*(i)     Wiley's Overall Position in the Litigation Was* **Less Than** *Objectively Reasonable, and This Factor Does Not Weigh in Wiley's Favor.*

The objective reasonableness factor for Wiley is a mixed bag. Two of Wiley's three claims had no legal merit when they were first asserted and then advanced for over a year of the litigation. A claim is frivolous where it completely lacks merit, and "objectively unreasonable" where "[t]he infirmity of the claim, while falling short of branding it as frivolous or harassing, must nonetheless

be pronounced." *Torah Soft Ltd. v. Drosnin,* 2001 U.S. Dist. LEXIS 19217, *1, 10 (S.D.N.Y. Nov. 27, 2001)*. Whereas the *Kirtsaeng II* Court explained that a consideration of "the totality of circumstances in a case" is required, Wiley's two specious claims for violation of the Lanham Act and unfair competition (under New York state law) should be considered when evaluating the reasonableness of the Plaintiff's litigation position.

Kirtsaeng argued in his fee application that, at best, the trademark infringement and unfair competition claims were objectively unreasonable because it was settled law years before Wiley's complaint was filed that the claims were preempted by the Copyright Act. *See* Kirtsaeng Reply Br. at 12, ECF No. 115; *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003); *Universal City Studios, Inc. v. T-Shirt Gallery, Ltd.*, 634 F. Supp. 1468, 1474 (S.D.N.Y. 1986) (collecting cases). As a sophisticated litigant, Wiley knew about its fatal preemption problem,[3] but it filed the claims anyway and then even included the frivolous unfair competition claim again in its amended complaint. ECF No. 1, 18. As a consequence, Kirtsaeng was forced to defend against Wiley's meritless claims (along with the copyright infringement claim), and pay legal bills for his defense for over one year until Wiley finally withdrew them one month before trial. ECF No. 41. By all accounts, Wiley's assertion of the two meritless claims was not something that a reasonable, sophisticated plaintiff would have done in seeking to protect his copyrights. The fact that only one out of Wiley's three claims was objectively reasonable is not a great indication of the overall objective reasonableness of Wiley's position in this litigation. At a minimum, this factor shows that Kirtsaeng deserves compensation for his yearlong defense against Wiley's clearly meritless claims.

---

[3] See cases cited in Note 1, *supra*, and discussion regarding Wiley's documented history of filing copyright infringement suits.

(ii)     *Wiley's Improper Motive to Use the Copyright Act in Order to Assert Downstream Control Over the Distribution of Textbooks Even After It Profited From the First Sale Weighs in Favor of Kirtsaeng.*

In *Video-Cinema Films*, the court noted that the improper use of the Copyright Act to prevent defendants from exercising their rights as consumers could be construed as an improper motive, and one that should be carefully considered in awarding attorneys' fees. *Video-Cinema Films, Inc.*, 2003 WL 1701904, *1, 5 (S.D.N.Y. Mar. 31, 2003). Here, Wiley's motivation in asserting its copyright monopoly even after it profited from the first sale went far beyond the Copyright Act's decree to *fairly* reward an author's creative labor.  Undoubtedly, "[t]he immediate effect of our copyright law is to secure a fair return for an 'author's' creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good." *Fogerty*, 510 U.S. at 526-27 (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)). Thus, the temporary copyright monopoly authorized in the U.S. Constitution (U.S. Const., Art I §8, cl. 8) must be limited in a fashion that ultimately serves the public good. *Id.* at 526. By asserting the position that it is illegal for consumers to resell their lawfully purchased textbooks, Wiley was not only preventing Kirtsaeng from exercising his rights as a consumer, but also attempting to assert downstream control over the distribution even after Wiley authorized—and profited—from the first sale of its works. Indeed, the Supreme Court was troubled by the "parade of horribles" that would ensue if Wiley's position was adopted:

> … reliance upon the "first sale" doctrine is deeply embedded in the practices of those, such as booksellers, libraries, museums, and retailers, who have long relied upon its protection. Museums, for example, are not in the habit of asking their foreign counterparts to check with the heirs of copyright owners before sending, e.g., a Picasso on tour. That inertia means a dramatic change is likely necessary before these institutions, instructed by their counsel, would begin to engage in the complex permission-verifying process that a geographical interpretation would demand. And this Court's adoption of the geographical interpretation could provide that dramatic change.

*Kirtsaeng I*, 133 S. Ct. at 1366.  Wiley's attempt to bring about the "absurd result that the copyright owner can exercise downstream control even when it authorized the import or first sale" (*id.*) was ill-motivated.

If, in asserting a claim for copyright infringement, Wiley was attempting to protect its copyright monopoly, then what was Wiley's motivation in advancing claims under the Lanham Act and New York's unfair competition law, when the Plaintiff knew them to be legally defective *ab initio*? Surely, it cannot be said that Wiley asserted those two claims to protect its copyright monopoly, since Wiley withdrew them on the eve of trial. More likely, the claims were injected not for their merit, but for the collateral purpose of leveraging Wiley's litigation position. It has been held that, "a party that knowingly gambles on an unreasonable legal theory in order to achieve a secondary gain—[for instance] in this case, the leveraging of a settlement—is indeed improperly motivated." *Torah Soft Ltd.*, 2001 U.S. Dist. LEXIS 19217, at *15. Wiley's leveraging maneuver worked to the extent that the Plaintiff was able to increase Kirtsaeng's attorney's fees and prolong the litigation. Therefore, Wiley was improperly motivated, at least to some extent, in gambling on an unreasonable legal theory in order to gain tactical advantage over Kirtsaeng in the litigation. The "motivation" factor does not weigh in Wiley's favor.

### (iii)   *Considerations of Compensation and Deterrence Strongly Favor an Award to Kirtsaeng.*

The impetus of Kirtsaeng's fee application and the instant submission is the $90,000 in fees that Kirtsaeng paid out of pocket to defend against Wiley's lawsuit at the trial level, and the $26,285 that Kirtsaeng still owes to his trial counsel. ECF No. 94-12. Courts have recognized the need to "enable the party possessing the meritorious … defense to press it to a successful conclusion" through attorney's fee awards. *Crown Awards, Inc. v. Discount Trophy & Co.*, 564 F. Supp. 2d 290, 295 (quoting *Assessment Techs. Of WI, LLC v. Wiredata, Inc.,* 361 F.3d 434, 437

(7th Cir. 2004)). "Defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them . . . ." *Fogerty,* 510 U.S. at 527. For example, in *Baker v. Urban Outfitters, Inc*., 431 F. Supp.2d 351, 359 (S.D.N.Y. 2006), the court noted the inherent unfairness in forcing a defendant to "engage counsel and expend resources to effect the dismissal of [plaintiff's unsuccessful] claims" and stated, "[i]t is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent." Indeed, the *Baker* court explained with respect to the compensation principle that, "the policies behind the Copyright Act would be violated by requiring [the defendant] to bear its own costs and fees" associated with its successful defense. *Id*. at 359, *aff'd*, 249 Fed. Appx. 845 (2d Cir. 2007). On the flip side, compensating the prevailing defendant for his meritorious defense of a copyright infringement action will further the policies of the Copyright Act. *Video-Cinema Films, Inc.*, 2003 WL 1701904, at *5. "[B]ut without an award of fees the prevailing defendant has only losses to show for the litigation*." FM Indus., Inc. v. Citicorp Credit Servs., Inc*., 614 F.3d 335, 339-40 (7th Cir. 2010).

Moreover, Kirtsaeng's need for compensation for his legal defense is bolstered—not tempered—by his landmark victory. Contrary to this Court's initial conclusion, a party's vindication of an important legal right—whether grounded in fair use or the first-sale doctrine— is a consideration that is weighed in favor, and not against a fee award to the prevailing party. *See, e.g., Pyatt v. Raymond*, 2012 U.S. Dist. LEXIS 58879, *1, 9 (S.D.N.Y. Apr. 25, 2012) (fees warranted where defendants deserved to be compensated because they "not only vindicated their right to use, create, and exploit original works that happen to employ a commonplace phrase, but furthered the goal of encouraging others to use such elements in their original works without fear of facing copyright infringement claims"); *Video-Cinema Films, Inc. v. CNN, Inc*., 2003 WL

13

1701904 (where the defendant produced news reports that served the public interest in accordance with the Copyright Act's fair use provision, fees were warranted because the defendant vindicated an important right to free expression). Kirtsaeng not only vindicated his right to resell textbooks that he lawfully purchased abroad, but he also furthered the goal of encouraging other, similarly-situated consumers to continue to do so without the fear of facing infringement claims from multinational conglomerates. Indeed, Kirtsaeng's victory was publicly declared a "major victory for American consumers." *See, e.g.,* Gary Shapiro, *Supreme Court Gives American Consumers Victory Over Copyright Owners in Kirtsaeng vs. John Wiley & Sons*, Forbes, Mar. 20, 2013.

As for the fact that Kirtsaeng's counsel provided the Defendant with *pro bono* representation at the Supreme Court level, the Supreme Court never said that the need to compensate a prevailing party is rendered moot by the *pro bono* nature of the party's legal representation at *some* point in the litigation. And on this note, the Supreme Court was troubled by Wiley's habitual inquiry into the relationship between Kirtsaeng and his counsel.[4] To Chief Justice Roberts, it seemed to be "quite an intrusion into the relationship between the party and counsel," one that did not warrant consideration in determining whether fees should be awarded. Transcript of Oral Argument, at 33:5-14, *Kirtsaeng II*, 136 S. Ct. 1979. The Court of Appeals similarly indicated that it did not agree with this Court's initial evaluation of the compensation factor vis-à-vis *pro bono* representation:

> In particular, we respectfully question the conclusion that considerations of compensation did not favor a fee award because the appellant was represented pro bono at the Supreme Court. Preventing litigants who are represented by pro bono counsel from receiving fees may decrease the future availability of pro bono counsel to impecunious litigants, who may, in the absence of pro bono representation, abandon otherwise meritorious claims and defenses. This runs counter to Fogerty's instruction that courts should exercise their discretion under §

---

[4] In a contempt proceeding that was ultimately dismissed, Wiley sought to elicit testimony against Kirtsaeng from Kirtsaeng's own lawyer. Wiley also relentlessly pursued discovery demands seeking plainly privileged, attorney-client communications and work product materials. *See* ECF No. 115, at 12-13.

14

505 so as to encourage the litigation of meritorious claims and defenses, because "it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible." *Fogerty*, 510 U.S. at 527.

*John Wiley & Sons, Inc. v. Kirtsaeng*, 605 F. App'x 48, 50 n.2 (2d Cir. 2015) (emphasis added). Encouraging defense counsel to take on such cases vindicating those important statutory limitations through the potential for later compensation is an important aspect of the evenhanded approach adopted in *Fogerty*. Thus, the fact that his attorneys agreed to take on Kirtsaeng's representation *pro bono* at the Supreme Court level should weigh in favor of a fee award—not against it. *See also Blue Moon Media Grp., Inc. v. Field*, U.S. Dist. LEXIS 108066, at *33 (E.D.N.Y. Apr. 11, 2011); *Vargas v. Transeau*, 2008 U.S. Dist. LEXIS 59344, at *4 (S.D.N.Y. Aug. 6, 2008) (awarding attorneys' fees under § 505 where party was represented pro bono); *Soba v. McGoey*, 761 F. Supp. 273, 278 (S.D.N.Y. 1991) ("When their client prevails … there is no reason why [pro bono counsel] should not be paid for their services at appropriate rates for the time required to handle the representation in a highly professional manner."); *LV v. NYC Dep't of Educ.*, 700 F. Supp. 2d 510, 516 n.8 (S.D.N.Y. 2010) ("Attorneys representing clients pro bono are not excluded from the usual approach to determining attorneys' fees …. [A] reasonable fee does not depend on whether the attorney works at a private law firm or a public interest organization"); *Reiter v. MTA NYC Transit Auth.*, 457 F.3d 224, 233 (2d Cir. 2006) ("[C]ourts must avoid decreasing reasonable fees because the attorneys conducted the litigation more as an act of pro bono publico than as an effort at securing a large monetary return" (internal quotations and citations omitted)).

In sum, although Kirtsaeng prevailed in a case that resolved an important legal issue for millions of consumers, he has only financial losses to show for his victory. Unlike Wiley, Kirtsaeng did not have $1.8 billion in annual revenue to help absorb litigation expenses. *See* Kirtsaeng Br., at 18, ECF No. 96. Having suffered steep legal bills and a four-year injunction that bankrupted

15

Kirtsaeng's lawful business enterprise, the compensation need alone is enough to warrant a fee award in this case regardless of the reasonableness of Wiley's position, and such a finding would be consistent with the mandates of *Kirtsaeng II*.

### (iv)   *Wiley's Overaggressive Assertion of Its Copyright Monopoly in This and Similar Litigations Warrants Some Deterrence Through a Fee Award.*

Significantly, in *Kirtsaeng II*, the Supreme Court singled out deterrence of "overaggressive assertions of copyright claims" as an example of the type of circumstance that warrants an award of fees "whatever the reasonableness" of the party's claims. *Kirtsaeng II,* at 1989 (citing *Bridgeport Music, Inc. v. WB Music Corp*., 520 F. 3d 588, 593-595 (6th Cir. 2008) [awarding fees against a copyright holder who filed hundreds of suits on an overbroad legal theory, including in a subset of cases in which it was objectively reasonable]). Wiley is no stranger to overly aggressive assertions of copyright infringement claims. *See* cases cited *supra* Note 1. And here, Wiley embarked on a crusade against a graduate student, which included two frivolous claims, applications for injunctions and attachment orders, contempt motions, turnover proceedings, and invasion into Kirtsaeng's relationship with his counsel. Considerations of deterrence are especially strong when a lawsuit is advanced against a financially weaker defendant and intended to pressure a quick settlement based on a cost/benefit analysis (as opposed to merit). *See, e.g., Torah Soft Ltd.*, 2001 U.S. Dist. LEXIS 19217, at *6; *Baker*, 431 F. Supp.2d at 359 ("[A]n award of costs and fees is crucial here, so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose."). Where, as here, defendants like Kirtsaeng rarely have the resources to advance the costs of litigating *meritorious* defenses, an award of attorney's fees serves to even the scale and give defendants an opportunity to prove their innocence. *See Assessment Techs. of WI, LLC v. Wire Data, Inc*., 361 F.3d 434, 437

(7th Cir. 2004) (Posner, J.) ("When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong. For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from enforcing his rights.").

On broader scale, it would serve the purposes of the Copyright Act to deter Wiley (and other, similarly situated content owners) from using copyright litigation in order to assert perpetual downstream control over their products even after profiting from the temporary monopoly allowed under the Copyright Act. *See id; see also Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.,* 74 F.3d 488, 492 (4th Cir. 1996) ("[T]he public has a corollary interest against any grant of an undeserving monopoly."). This is especially important when a position advocated by the copyright owner presents "absurd result[s]" and "intolerable consequences" to consumers if adopted. *See Kirtsaeng I,* 133 S. Ct. at 1366. Indeed, the majority of Justices in *Kirtsaeng I* were not merely *unconvinced* by Wiley's argument; they expressed "fears" that excluding foreign-made copies would enable copyright owners to "exercise perpetual control over the downstream distribution or public display of such copies." *Id.* The Supreme Court tallied that "many, if not all, of" the "over $2.3 trillion worth of foreign goods [that] [a]re imported" and sold in the U.S. every year would be subject "to the disruptive impact of the threat of infringement suits" if Wiley's position were adopted. *Id.* at 1354, 1365. In the worst case scenario, a fee award will encourage Wiley and similar copyright holders to be a bit more discerning in bringing their copyright infringement lawsuits.

### (v)   *Litigating Novel or Close Cases Advances the Purposes of the Copyright Act and Does Not Raise a Presumption Against Awarding Fees.*

The Supreme Court accepted the "premise that litigation of close cases can help ensure that the boundaries of copyright law are demarcated as clearly as possible." *Kirtsaeng II,* at 1987.

Whereas this Court previously relied on a holding of two cases that stood for the proposition that a there should be a presumption *against* awarding fees in novel or close cases,[5] *Kirtsaeng II* dispelled that notion by acknowledging that the fee applicant's pursuit of novel or close issues in litigation advances the purposes of the Copyright Act, thus weighing in favor of the fee award. *Id.* at 1987-88. Here, Kirtsaeng pursued litigation of a novel and important issue concerning the First Sale Doctrine's application to goods manufactured abroad and re-sold in the United States. As for Wiley's suggestion that Kirtsaeng's counsel was incentivized not by a prospective fee award but by the chance to appear in the Supreme Court, Wiley already conceded that the law firm's incentives are irrelevant and the *pro bono* aspect did not have "any major impact on the outcome here." Transcript of Oral Argument, at 33:15-20, *Kirtsaeng II*, 136 S. Ct. 1979. Kirtsaeng's litigation of this close case advanced the public interest in creative work, weighing in favor of a fee award. *Kirtsaeng II*, at 1988. *See also Kirtsaeng I,* 133 S. Ct. at 1366 ("reliance upon the 'first sale' doctrine is deeply embedded in the practices of … booksellers, libraries, museums, and retailers[] who have long relied upon its protection" to save them from claims of copyright infringement for importing and reselling works manufactured abroad.").

#### (vi)    *The Degree of Kirtsaeng's Success Favors a Fee Award.*

Wiley does not dispute that Kirtsaeng obtained an extremely high degree of success in litigating this close case. In light of the Supreme Court's new guidance that any relevant factor may outweigh the substantial weight that may be assigned to the objective reasonableness factor, this factor alone warrants a fee award. While being made whole financially might be slightly more important to Kirtsaeng than the *degree* of his success in the Supreme Court, the Court should

---

[5] *John Wiley & Sons, Inc. v. Kirtsaeng*, 2013 U.S. Dist. LEXIS 179113, *1, 20 (S.D.N.Y. Dec. 20, 2013) (citing *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 683 (S.D.N.Y. 2011) and *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001)).

consider the impact of the *Kirtsaeng I* decision on copyright law, consumers of copyrighted works and the secondary markets. True, it took both litigants to advance the case to the Supreme Court, but it was Kirtsaeng who prevailed and applied for attorney's fees. Therefore, this factor weighs in Kirtsaeng's favor.

> ### (vii)   *The Court Should Consider the Financial Disparity of the Parties and the Ruinous Effect of Wiley's Litigation on Kirtsaeng's Enterprise as Factors Weighing in Favor of a Fee Award to Kirtsaeng.*

This Court should consider the relative financial strengths of the parties in its assessment of whether fees are warranted (not solely as a measure of reasonableness of the fees). The Supreme Court's instructed that *all* relevant factors must be considered, and courts in this Circuit have included this factor in their analysis even prior to *Kirtsaeng II. See, e.g., Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 132 (S.D.N.Y. 2008) ("Courts assessing attorney's fee applications in copyright actions may consider the relative financial strengths of the parties in determining whether an award of fees is appropriate."); *Brown v. Perdue*, 2006 U.S. Dist. LEXIS 66563 (S.D.N.Y. Sept. 15, 2006); *Torah Soft Ltd.*, 2001 U.S. Dist. LEXIS 19217 (citing cases). The imbalance of wealth and power between Kirtsaeng, Thai graduate student, and Wiley, a publicly-traded, multinational conglomerate, is profound. Even an award of $90,000, which represents the fee amount that Kirtsaeng paid to his counsel, would be significant for Kirtsaeng, while a drop in the bucket for Wiley. And to this end, an attorney's fee award in Kirtsaeng's favor will further the Copyright Act's goals by incentivizing impecunious defendants to stand up to corporate goliaths when advancing their meritorious defenses.

One factor that the Court overlooked in its prior decision is that Kirtsaeng's losses exceeded the $90,000 that he paid to his attorneys. Wiley froze the funds in Kirtsaeng's bank account and obtained an injunction preventing Kirtsaeng's sole enterprise from continuing to operate. Contrary to the Court's suggestion that, after four years of a complete shutdown of his

business, Kirtsaeng can "continue his arbitrage business" (*John Wiley & Sons, Inc.*, 2013 U.S. Dist. LEXIS 179113, at *14) this is an unrealistic prospect for Kirtsaeng, who was rendered penniless by Wiley's lawsuit and moved back to his native Thailand. (Indeed, we wonder if any business could simply revive itself at no cost after an injunction that completely prevented it from operating for over four years.) Here, Wiley's four-year injunction cost Kirtsaeng all income that he could have generated from his *lawful* activities during his limited time in the U.S. The profits Kirtsaeng could have expected but for Wiley's lawsuit have been lost. Moreover, the four-year injunction deprived consumers (here, mainly students) from the benefit of being able to purchase used books. This consideration is especially relevant in light of the Copyright Act's purposes of fostering consumer access, and uniquely weighs in Kirtsaeng's favor in this case.

## IV.     CONCLUSION

For the foregoing reasons, Kirtsaeng respectfully submits that a reassessment of the relevant circumstances in this case in light of the new guiding precedent warrants an award of attorney's fees and costs to Kirtsaeng, the reasonableness of which should be determined by the Court upon further review of the parties' submissions.


Dated: New York, New York
                December 8, 2016                         Respectfully Submitted,

                                                    By:     /s/ Eleonora Zlotnikova

                                                    **Sam P. Israel, P.C.**
                                                    Sam Israel (SPI0270)
                                                    Eleonora Zlotnikova, Esq. (ELZ 5005)
                                                    180 Maiden Lane, 6th Floor
                                                    New York, New York 10038
                                                    T: (646) 787-9880 | F: (646) 787-9886
Of Counsel:                                         E: ElZlotnikova@spi-pc.com
                                                    *Attorneys for Defendant Supap Kirtsaeng*
E. Joshua Rosenkranz, Esq.
**Orrick, Herrington & Sutcliffe
LLP**